UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 23-cv-80702-AMC

SAFED AKHTAR KHAN, M.D.,

      Plaintiff,

vs.

NOEL E. STEPHEN, individually and in his
official capacity as Sheriff of Okeechobee County,
TERESA CHANDLER, JAVIER GONZALEZ,
JONATHAN S. HENDRICKS, ASHLEY K.
ALBRIGHT, each in their individual capacities,
and THOMAS BAKKEDAHL, in his official
capacity as State Attorney of the nineteenth
Judicial Circuit,

      Defendants.

_____/

## DEFENDANTS JONATHAN S. HENDRICKS AND ASHLEY K. ALBRIGHT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants, JONATHAN S. HENDRICKS ("ASA Hendricks") and ASHLEY K. ALBRIGHT ("ASA Albright") (collectively, "ASA Defendants") by and through their undersigned counsel, Whitelock & Associates, P.A., and pursuant to Fed. R. Civ. P. 12(b)(1)(6) and S.D. Fla. L. R. 7.1(a)(c), hereby file this Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Memorandum of Law [D.E. 60], and in support thereof state as follows:

## I.    PRELIMINARY STATEMENT

On April 25, 2023, Plaintiff filed a fifteen (15) count, ninety-five (95) page lawsuit containing five hundred and eleven (511) allegations against six (6) Defendants, including the State Attorney in his official capacity and two assistant state attorneys in their individual capacities. *See generally* D.E. 1. The lawsuit stems from the arrest and prosecution of Plaintiff for

1

battery in two separate cases based on police reports filed by Defendant Teresa Chandler ("Chandler"), Plaintiff's former patient, in May of 2020, and non-party Dina Campbell ("Campbell") in August of 2020.[1] The Five (5) counts against the ASA Defendants included Count II, Malicious Prosecution under Section 1983 – the Campbell Criminal Prosecution; Count III, Conspiracy to Maliciously Abuse Process (Fair Hearing) under Section 1983, Count VI, Malicious Abuse of Process as to the issuance of an Emergency Revocation Order by the Florida Department of Health, Count VII, Malicious Abuse of Process as to the Chandler civil litigation (Chandler Case) and Count IX, Malicious Prosecution as to the Campbell criminal prosecution (Campbell Case). On August 30, 2023, the ASA Defendants filed a Motion to Dismiss Plaintiff's Complaint. [D.E. 47]. On September 25, 2023, Plaintiff filed a one hundred and six (106) page Amended Complaint containing twenty-eight (28) counts and five hundred and eighty-two (582) allegations. [D.E. 60].[2]

As to the ASA Defendants, Plaintiff has dropped the malicious prosecution claims, changed the "malicious abuse of process" claims to "abuse of process," and added a claim for tortious interference with a business relationship. *See generally* D.E. 60. Despite Plaintiff's knowledge of the pleading deficiencies raised in the ASA Defendants' Motion to Dismiss, Plaintiff has nonetheless filed yet another deficient pleading. Specifically, and as aptly set forth fully herein, the Amended Complaint should be dismissed as it is, again, a shotgun pleading; the ASA Defendants are entitled to immunity; and, the Plaintiff has otherwise failed to properly state a

---

[1] For clarification purposes, Defendants will refer to allegations related to Plaintiff's prosecution based on Defendant Chandler's accusations as the "Chandler Case" and those related to Campbell's accusations as the "Campbell Case."

[2] On September 12, 2023, Plaintiff filed a Notice of Voluntary Dismissal with Prejudice as to Defendant State Attorney Thomas Bakkedahl. [D.E. 53].

claim. Accordingly, the Plaintiff's claims against the ASA Defendants in Counts VII, VIII, XIII, XIV, XXV and XXVI should be dismissed as a matter of law.

## II.     BACKGROUND

As previously stated herein, the claims in this case are based on the alleged arrest and prosecution of Plaintiff for battery in two (2) separate criminal cases in Okeechobee County, Florida, specifically, the Chandler Case and the Campbell Case as defined herein. *See generally* D.E. 60. During these cases, Plaintiff alleges that the ASA Defendants were acting under color of state law. *Id.* at p. 3, ¶ 8; p. 4, ¶ 17; p. 61, ¶ 385; p. 64, ¶ 398; p. 67, ¶ 411; and pp. 69-70, ¶ 425.

### A.   The Chandler Case

#### 1.   The Encounter

According to the Amended Complaint, Defendant Chandler was Plaintiff's patient from 2005 through April 2019 when she changed doctors. [D.E. 60 at p. 11, ¶ 63]. According to Plaintiff, there was no communication between him and Chandler between April 2019 and September 13, 2019, when Chandler sent Plaintiff a Facebook message and, after receiving no response, texted Plaintiff. *Id.* at p. 11, ¶ 64. Plaintiff claims that on September 13, 2019, Chandler met with Plaintiff at his office and requested to return as a patient but Plaintiff refused. *Id.* at p. 11, ¶ 65. Plaintiff then claims that Chandler asked Plaintiff for advice about her pending divorce. *Id.* at p. 11, ¶ 66.

According to Plaintiff, after the September 13, 2019 encounter, there was no communication between Chandler and Plaintiff until February 19, 2020 when Plaintiff initiated an exchange by responding to a post by Chandler on Facebook. *Id.* at pp. 11-12, ¶¶ 68-69. Plaintiff claims that on February 25, 2020, Chandler asked to meet with Plaintiff to discuss her divorce as well as medical matters and he agreed. *Id.* at p. 12, ¶ 71. According to Plaintiff, on that same day,

3

he and Chandler met in his administrative office adjacent to nearby staff workstations. *Id.* at p. 12, ¶ 74. Plaintiff alleges that Chandler was concerned about "receiving only a paltry financial award in her divorce and wanted to know if [Plaintiff] could help her with the divorce, and financially." *Id.* at p. 13, ¶ 76. According to Plaintiff, Chandler "purposefully exposed her breasts and invited [Plaintiff] to touch," however, she later claimed that Plaintiff improperly touched them. *Id.* at p. 13, ¶¶ 77-78.

### 2.  **The Investigation and Prosecution**

According to Plaintiff, Chandler then waited seventy (70) days and, on May 4, 2020, reported to law enforcement that Plaintiff battered her while she was at his medical office on February 25, 2020. *Id.* at p. 13, ¶ 78. Plaintiff claims that Chandler sought advice on how to extort Plaintiff and targeted Plaintiff because, "in her own words, '[Plaintiff] is a wealthy man'" *Id.* at p. 13, ¶ 82 and p. 2, ¶ 4, respectively. According to Plaintiff, as part of the criminal investigation, Sgt. Gonzalez conducted two "controlled calls," one on May 6, 2020 and the other on May 21, 2020 which was done via Facetime. *Id.* at p. 17, ¶ 106 and p. 18, ¶ 111.  According to Plaintiff, during the Facetime call Chandler attempted to get Plaintiff to state the encounter was non-consensual, "but because it was consensual, he did not." *Id.* at p. 28, ¶ 126. Plaintiff alleges that during the first call he "clearly reminded Chandler" that the encounter was consensual. *Id.* at p. 20, ¶ 83.  In addition, Plaintiff claims that during the second call, Chandler did not deny the encounter was consensual. *Id.*

Next, Plaintiff alleges that ASA Albright made comments to the press about the prosecution case and agreed to provide the press with evidence that is allegedly exempt from Florida Statutes Chapter 119 (Freedom of Information Act). *Id.* at p. 42, ¶¶ 272-273.  Specifically, Plaintiff alleges that ASA Albright sent correspondence to a WPBF Channel 25 reporter, while

4

both criminal cases were pending and then allegedly agreed to provide her with videotaped interviews of Chandler, the recordings of the two controlled calls and the recorded interview of Plaintiff along with instructions on how to access Chandler's phone records. *Id.* at p. 42, ¶ 272. However, the Amended Complaint is devoid of any allegation that ASA Albright ever sent the aforementioned evidence. *See generally id.* Despite the information all being related to a criminal matter, Plaintiff asserts that these actions were outside ASA Albright's scope of duty as a prosecutor because the information provided was exempt from public disclosure under Chapter 119. *Id.* at p. 42, ¶ 273. According to the Complaint, the Chandler case ended with a "not guilty" jury verdict. *Id.* at p. 24, ¶ 157.

### 3.  Chandler's "Relationships" with Judge Wallace and Sheriff Stephen

Throughout the Amended Complaint, Plaintiff makes various accusations of personal relationships between Chandler and government officials in Okeechobee County, specifically Judge William Wallace of the 15th Judicial Circuit and Sheriff Stephen. *Id.* at p. 10, ¶ 24.  For example, Plaintiff claims that Judge William Wallace, a former attorney of Chandler's and the judge who signed the initial arrest warrant in the Chandler Case, was an intimate friend of Chandler, of which ASA Hendricks was aware. *Id.* at p. 41, ¶ 270.  Plaintiff alleges that the ASA Defendants "knew" about the relationship between Judge Wallace and Chandler." *Id.* at p. 40 ¶ 259.  As to Sheriff Stephen, Plaintiff claims that Chandler had a romantic relationship with Sheriff Stephen and used her relationship with him but does not identify how. *Id.* at p. 2, ¶ 3 and p. 7, ¶ 34.  According to the Plaintiff, the ASA Defendants knew of the close relationship between Chandler and Sheriff Stephen based on text messages allegedly in the possession of the ASA Defendants and conspired with the Sheriff and Gonzalez "to further the extortion scheme by violating rights."  *Id.* at p. 16, ¶ 97 and p. 2, ¶ 3.

5

### 4.  **The Florida Department of Health Complaint**

Subsequent to Chandler's reporting of the alleged battery, Chandler filed a complaint with the Florida Department of Health ("DOH"). *Id.* at p. 24, ¶ 160. Plaintiff claims that Chandler's lawyers along with Sheriff Stephen advised her to file the formal complaint and claim she was an active patient even though she was not. *Id.* at p. 24, ¶ 158. According to Plaintiff, the extortion scheme "included each Defendant working together to procure an emergency restriction order ("ERO") from the Florida Department of Health ("DOH")" restricting Plaintiff from practicing medicine in Florida. *Id.* at p. 2, ¶ 5.

Plaintiff alleges that the DOH began a joint effort with the ASA Defendants and others to suspend and revoke Plaintiff's medical license. *Id.* at p. 37, ¶ 186. Plaintiff also claims that Chandler, along with Sheriff Stephen, Sgt. Gonzalez and Chandler's attorney's discussed finding new false claimants/victims to "bolster [Chandler's] claim with DOH, get immediate attention, and increase her chance of a monetary settlement." *Id.* at p. 25, ¶ 163.[3] Plaintiff further alleges that ASA Hendricks "misinformed" Sgt. Gonzalez that he received a report from the Okeechobee City Police Department ("OCPD") about two additional victims. *Id.* at p. 25, ¶ 165. Upon learning of these new alleged victims, ASA Hendricks requested that Sgt. Gonzalez investigate them. *Id.* at p. 41, ¶ 268. It was later determined when Sgt. Gonzalez contacted the OCPD that the two alleged victims were never patients of Plaintiff. *Id.* at p. 25, ¶ 171. As for the eight victims alleged by Chandler, Plaintiff claims that Chandler could not provide their names. *Id.* at p. 25, ¶ 170.

According to Plaintiff, Chandler then "falsely" informed the DOH investigator of the ten additional victims who came forward---the eight allegedly known by Chandler and the two

---

[3] Notably, the original Complaint included the ASA Defendants as part of this group; however, Plaintiff has removed them from this allegation in the Amended Complaint and added Chandler's attorneys. [D.E. 1 at p. 26, ¶ 119].

communicated by ASA Hendricks based on the report from the OCPD. *Id.* at 25, ¶ 166. Plaintiff asserts that the DOH failed to perform basic investigative duties and the issuance of the ERO caused irreparable damage "by alleging the false existence of these additional 'victims' which was widely disseminated on social media and in the community." *Id.* at p. 26, ¶ 176.

### B. The Campbell Case

On July 6, 2020, Sgt. Gonzalez interviewed Campbell based on allegations that Plaintiff improperly placed his stethoscope on Campbell's breast and cupped it with his hand. *Id.* at p. 31, ¶ 206. According to Plaintiff, Chandler enlisted Campbell to be a "phony victim" to bolster her own allegations and increase pressure on Plaintiff for a larger settlement. *Id.* at p. 31, ¶ 205. Plaintiff claims that Sgt. Gonzalez initially indicated in the report that the allegation was "informational" because "he [Sgt. Gonzalez] knew that the lack of specificity would not justify an arrest warrant." *Id.* at p. 31, ¶ 208. Subsequently, according to Plaintiff, Campbell sent Sgt. Gonzalez her medical records. *Id.* at p. 31, ¶ 209. In connection with the Campbell case, Plaintiff alleges that ASA Hendricks sought a recommendation from his colleagues at the Ft. Pierce State Attorney's Office for a medical doctor to opine on whether the placement of the stethoscope by Plaintiff constituted improper medical treatment. *Id.* at p. 42, ¶ 276. ASA Hendricks specifically advised that he was looking for a doctor outside of the Okeechobee area "to avoid running into issues of personal bias and local hospital politics." *Id.* While Plaintiff stated in his first Complaint that ASA Hendricks was referred to Dr. Michelle Libman ("Dr. Libman") [D.E.1 at p. 45, ¶ 238], the Amended Complaint is devoid of any connection between Dr. Libman and ASA Hendricks and merely alleges that Dr. Libman was the State's expert witness [D.E. 60 at p. 32, ¶ 216]. According to Plaintiff, Sgt. Gonzalez wrote an incident report and indicated that he received information from a physician who stated that the manner in which Plaintiff conducted his physical

exam of Campbell was not medically appropriate. *Id.* at p. 43, ¶ 278. The Campbell case resulted

in a mistrial, and before the new trial, the State entered a nolle prosequi. *Id.* at p. 33, ¶ 217 and p.

¶ 220, respectively.

### III.  MEMORANDUM OF LAW

### A.  Legal Standard

To satisfy the pleading requirements of the Federal Rules of Civil Procedure, a complaint

must contain a short and plain statement showing an entitlement to relief and must "give the

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell*

*Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To avoid a dismissal, the "complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (*citing Twombly*, 550 U.S. 544 at 570). "Labels and conclusions" or "a formulaic recitation

of the elements of a cause of action" that amount to "naked assertions" will not do. *Twombly*, 550

U.S. at 555.

As the Eleventh Circuit has explained, the *Twombly/Iqbal* principles require that a

complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker*

*v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623

F.3d 1371, 1380 (11th Cir. 2010). "[I]f allegations are indeed more conclusory than factual, then

the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337

(11th Cir. 2012). Thus, legal conclusions in a complaint without adequate factual support are not

legally entitled to an assumption of truth. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir.

2011).

**B.      Plaintiff's Amended Complaint is a shotgun pleading.**

A shotgun pleading is a complaint that violates either [rule] 8(a)(2) or [r]ule 10(b), or both"

and is "flatly forbidden." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). The law of

this Circuit has little tolerance for shotgun pleadings. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d

1291, 1295 (11th Cir. 2018).   The federal judiciary is a system of scarce resources, and "[i]t is not

the proper function of courts in this Circuit to parse out incomprehensible allegations." *Barmapov

v. Amuial,* 986 F.3d 1321, 1327-28 (11th Cir. 2021) (*quoting Estate of Bass v. Regions Bank, Inc.*,

947 F.3d 1352, 1358 (11th Cir. 2020)).   The district courts of this Circuit "have neither the

manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims

for plaintiff's counsel." *Barmapov v. Amuial,* 986 F.3d at 1327-28. There are four types of

prohibitive shotgun pleadings in this Circuit, the most common being ones that "commit{} the sin

of not separating into a different count each cause of action or claim for relief {or} asserting

multiple claims against multiple defendants without specifying which of the defendants are

responsible for which acts or omissions, or which of the defendants the claim is brought

against." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792. F.3d 1313, 1321-23 (11th Cir. 2015).

The second most common type of shotgun pleading is "a complaint that does not commit

the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete

with conclusory, vague, and immaterial facts not obviously connected to any particular cause of

action." Id. at 1322. This typical shotgun complaint contains several counts, each one incorporating

by reference the allegations of its predecessors, leading to a situation where most of the counts

contain irrelevant factual allegations and legal conclusions. *Strategic Income Fund, L.L.C v. Spear,

Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). A complaint that incorporates

numerous paragraphs into one count that are over-inclusive for purposes of that claim is a shotgun

pleading. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792. F.3d at 1322. In such instance, "any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Finally, a plaintiff must not be permitted through the use of shotgun pleadings to strip government officials of the protection afforded by the official immunity doctrine. *Marx v. Gumbinner*, 855 F.2d 783, 792 (11th Cir. 1988) (*abrogated on other grounds*).

Here, this amended pleading is yet another shotgun pleading. While Plaintiff separated the claims, the Amended Complaint still contains conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. Specifically, Counts XXV and XXVI – Tortious Interference with Business Relationships against ASA Hendricks and ASA Albright, respectively – incorporates 292 paragraphs spanning forty-four (44) pages containing legal conclusions and irrelevant facts that have absolutely nothing to do with the claim. *Id.* at pp. 99-103. For example, incorporated into these two (2) claims is a section related to Chandler's recruitment of additional victims [*id.* at pp. 33-37], with another section regarding Sheriff Stephen's communications with Plaintiff [*id.* at pp. 22-24], as well as referencing numerous random text messages [*id.* at pp. 5-10, 12, 14-16, 22, 28, 30 and 39] that are completely immaterial to Plaintiff's claim of tortious interference with business relationships.

Moreover, Plaintiff makes the legal conclusion (among many others) that ASA Hendricks is not entitled to immunity because his alleged acts did not pertain to him "preparing the criminal charges and /or participating in the judicial proceedings." *Id.* at p. 68, ¶ 415. Count VIII is a conspiracy claim against ASA Albright, and again, Plaintiff incorporates 187 paragraphs containing irrelevant "facts" and legal conclusions, albeit devoid of any dates and/or times of these purported conspiratorial meetings. *Id.* at pp. 66-68. Plaintiff also asserts that "Albright's malice is

implied" and his actions were "outside the scope of his prosecutorial functions," which are conclusory. *Id.* at p. 70, ¶ 427. In short, each count is over-inclusive of not only immaterial facts for that specific count, but such are replete with improper conclusory facts. A few of the exorbitant number of examples are that Plaintiff alleges there "was malice on the part of Hendricks when he acted in concert with the other defendants" (*id.* at pp. 67-68, ¶ 414); Defendant Albright, "separately and in conjunction with the other defendants, with an ulterior motive, and acting outside of his prosecutorial duties but for a process other than such as would be proper" (*id.* at p. 77, ¶ 457); and Hendricks "is not entitled to immunity because the nature of the acts complained of [] do not pertain to him preparing the criminal charges and/or participating in the judicial proceedings" (*id.* at pp. 68, ¶ 415) The Amended Complaint is replete with similar examples of Plaintiff merely regurgitating the elements of the claim in a conclusory fashion. As aptly set forth herein, the purpose of these procedural requirements is to appropriately provide factual notice to a defendant which is the "touchstone of the Eleventh Circuit's shotgun pleading framework." *Weiland*, 792 F.3d at 1322-23. By consistently incorporating hundreds of allegations into each count that contain a rambling recitation of irrelevant averments, it impossible to give the Defendants adequate notice of the grounds upon which each claim rests; thus, this pleading is, by definition, an impermissible shotgun pleading and should be dismissed.

### C.    **The ASA Defendants are immune.**

Two types of immunity shield a prosecutor from civil suit in this Circuit: (1) absolute immunity and (2) qualified immunity. *Rehberg v. Paulk*, 611 F. 3d 828, 837-38 (11th Cir. 2010).

### 1.   **Absolute Immunity**

"[A]t common law, '[t]he general rule was, and is, that a prosecutor is absolutely immune from suit for malicious prosecution.'" *Id.* at 837 (*citing Malley v. Briggs,* 475 U.S. 335, 342, 106

S.Ct. 1092, 1097, 89 L.Ed.2d 271(1986) (*quoting Imbler,* 424 U.S. at 437, 96 S.Ct. at 998)). Individual prosecutors are entitled to absolute immunity for actions taken while prosecuting cases, including the decision to charge a defendant with a crime. *Bevan v, Durling*, 2007 WL 1721460, at *2 (11th Cir. June 15, 2007) ("A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government.) The prosecutorial function includes the initiation and pursuit of criminal prosecution and all appearances before the court, including examining witnesses and presenting evidence. *Id.* (internal citations omitted); *Holt v. Crist*, 233 Fed. Appx. 900, 903 (11th Cir. 2007). Immunity extends to charging a defendant without probable cause and to the knowing proffer of perjured testimony and fabricated exhibits at trial. *Id.* (internal citations and quotations omitted) (*citing Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279-81 (11th Cir. 2002) ). Florida law is in accord. *Office of State Atty, Fourth Judicial Circuit v. Parrotino*, 628 So.2d 1097, 1099 (Fla. 1993). Prosecutorial immunity in Florida has long existed apart from sovereign immunity, has an independent basis in law and policy, and has not been waived. *Id.* Absolute prosecutorial immunity does not depend entirely on a defendant's job title, but involves a functional approach granting immunity based on conduct. *Jones v. Cannon,* 174 F.3d 1271, 1282 (11th Cir. 1999)). This functional approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993); *accord Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33.

Moreover, traditional common-law immunities for prosecutors apply to civil cases brought under §1983. *Rehberg v. Paulk*, 611 F. 3d at 837 (*citing Imbler v. Pachtman,* 424 U.S. at 427-28). In §1983 actions, prosecutors have absolute immunity for all activities that are "'intimately associated with the judicial phase of the criminal process.'" *Rehberg v. Paulk*, 611 F. 3d at 837

(*citing Van de Kamp v. Goldstein,* 555 U.S. 335, 129 S.Ct. 855, 860, 172 L.Ed.2d 706 (2009) (*quoting Imbler,* 424 U.S. at 430, 96 S.Ct. at 995)); *accord Jones v. Cannon,* 174 F.3d at 1281. In initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983. *Holt v. Crist*, 233 Fed. Appx. at 903. "[T]he duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Imbler,* 424 U.S. at 431, n. 33. A prosecutor would be negligent in his duties if he did not interview witnesses before presenting their testimony to the Grand Jury. *Cook v. Houston Post,* 616 F.2d 791, 793 (5th Cir. 1980). His duties as a prosecutor require him to obtain, examine and interpret documents. *Id.* "Not all of an advocate's work is done in the courtroom. For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation." *Id.*

The Eleventh Circuit has held that absolute prosecutorial immunity extends to presenting fraudulent and illegal evidence to a grand jury, *see Slavin v. Curry,* 574 F.2d 1256, 1264 (5th Cir.), *modified on other grounds,* 583 F.2d 779 (5th Cir. 1978); interviewing witnesses before presenting them to a grand jury, *see Cook v. Houston Post,* 616 F.2d at 791; filing charges without jurisdiction, *see Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir. 1979), filing a baseless detainer, *id.*; *Henzel,* 608 F.2d at 657; and offering perjured testimony at trial or suppressing exculpatory evidence, *Hart v. Hodges,* 587 F.3d at 1295. Prosecutorial acts performed in preparation for trial after an arrest (or determination of probable cause) are absolutely immune. *See Buckley v. Fitzsimmons,* 509 U.S. at 273-74. Moreover, a prosecutor's decision to prosecute, even if made without probable cause and with retaliatory animus is still protected by absolute immunity. *Hartman v. Moore*, 547 U.S. 250, 261-62 (2006), *accord Rehberg*, 611 F.3d at 849.

13

Applying the law of this Circuit to the allegations in this amended pleading, the ASA Defendants' alleged actions are clearly protected by absolute prosecutorial immunity. Said actions are either preliminary to the initiation of the prosecution of Plaintiff or occurred during the prosecution. For example, Plaintiff claims that after he was arrested for the Chandler Case, ASA Hendricks communicated with lawyers from the DOH [D.E. 60. at p. 42, ¶ 274]; communicated with co-workers about Plaintiff (*Id.* at p. 42, ¶ 276) and directed Sgt. Gonzalez to investigate ten (10) additional alleged victims (*Id.* at p. 41, ¶ 268.).[4]  Clearly, all of these actions were "intimately associated with the judicial phase of the criminal process." In fact, most of Plaintiff's claims, just like before, are based on alleged acts performed by the ASA Defendants that are directly related to their duties as advocates for the State. Similarly, Plaintiff accuses the ASA Defendants of not taking as true Plaintiff's claim that the physical encounter with Chandler was consensual (*Id.* at p. 66, ¶ 406 and p. 42, ¶ 275) and of working with Sheriff Stephen and Sgt. Gonzalez during the preliminary investigation (*Id.* at p. 40, ¶ 262).  Once again, these alleged acts are prosecutorial duties and are otherwise expected to be performed by a prosecutor. In all, the averments in this amended pleading, as before, describe acts, even in the light most favorable to the Plaintiff, which are completely and totally immune from civil suit as a matter of law.

## 2. **Qualified Immunity**

Notwithstanding, the ASA Defendants are also shielded by qualified immunity. Even if a public official does not receive absolute immunity, the official may be entitled to qualified immunity for his actions. *Rehberg v. Paulk*, 611 F. 3d at 838.  Qualified immunity shields "government officials 'from liability for civil damages insofar as their conduct does not violate

---

[4] This Court has held that requesting an investigation of complaints falls within the duties as a prosecutor. *Rindley v. Gallagher*, 890 F.Supp. 1540, 1556 (S.D. Fla. 1995).

clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The immunity is designed to permit "government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). It "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" *Id.* (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). To be afforded qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* (*quoting Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991). If the official proves such, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* To defeat qualified immunity, "(1) the relevant facts must set forth a violation of a constitutional right, and (2) the defendant must have violated a constitutional right that was clearly established at the time of defendant's conduct." *Taylor v. Hughes*, 920 F.3d 729, 732 (11th Cir. 2019). "Clearly established" means that at the time of the acts or omissions, the law was sufficiently clear that every reasonable person would understand that the conduct was unlawful. *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1991-92 (11th Cir. 2009). To be clearly established, the Plaintiff must (1) cite to existing case law with indistinguishable facts that clearly establishes that right; (2) point to a broad principal statement within the Constitution, statute or case law that clearly establishes the constitutional right; or (3) allege conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

The Supreme Court and this Court have stated that a plaintiff cannot strip a Section 1983 defendant of his qualified immunity by citing to general rules or abstract rights. *See Anderson,* 483 U.S. at 639, 107 S.Ct. 3034; *Walker v. Schwalbe,* 112 F.3d 1127, 1132 (11th Cir.1997) ("Plaintiffs may not discharge their burden [of showing that a right is clearly established] by referring to general rules and abstract rights."). "Qualified immunity focuses on the actual, specific details of concrete cases." *Id.*

Here, Plaintiff's claims against the individual ASA Defendants are all clearly barred by qualified immunity. First, Plaintiff does not dispute that these individual Defendants were acting within the scope of their discretionary duties. [*See generally* D.E. 60]. To the contrary, Plaintiff acknowledges that the ASA Defendants were employees of the Office of the State Attorney for the Nineteenth Judicial Circuit and were acting under color of state law. *Id.* at p. 3, ¶ 8; p. 4, ¶ 17; p. 61, ¶ 385; p. 64, ¶ 398; p. 67, ¶ 411; and pp. 69-70, ¶ 425.   As such, the burden shifts to Plaintiff to show why the ASA Defendants are not entitled to qualified immunity, which Plaintiff cannot do. Specifically, Plaintiff fails to allege any *Twombly* facts as to either ASA Defendant to demonstrate a violation of any law, let alone a violation of clearly established law. In Count VII and VIII- Conspiracy to Maliciously Abuse Process- Plaintiff fails to allege any facts of a conspiracy and only references "conspiracy" as a conclusory allegation in the title of the Count. *Id.* at pp. 66 and 69.  The only other reference is to an "extortion conspiracy" glossed over in the general "FACTS" section. *Id.* at p. 4, ¶ 18. Moreover, although Plaintiff provides a list of facts to show implied malice on the part of the ASA Defendants, none do so. *Id.* at p. 67, ¶ 413 and p. 70, ¶ 427. Finally, Counts VII and VIII- are devoid of any allegations as to the ASA Defendants and again, Plaintiff merely recites the elements of the claim. *Id.* at pp. 66-71.

Consequently, the ASA Defendants are immune from Plaintiff's claims. There are no averments demonstrating any violation of clearly established law because, quite simply, none exist. Accordingly, the ASA Defendants are entitled to, alternatively, qualified immunity, and thus, all such claims must be dismissed.

**D.      The Plaintiff has failed to sufficiently allege a claim for conspiracy to maliciously abuse process**

Plaintiff fails to state a claim for malicious abuse of process. A claim of malicious abuse of process requires some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process, and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. *Pottinger v. City of Miami*, 810 F.Supp. 1551, (S.D. Fla. 1992) (*citing* Prosser at 857). Unlike malicious prosecution, the tort of abuse of process does not involve bringing an action without justification; rather, abuse of process is a misuse of "a process justified in itself for an end other than that which it was designed to accomplish." W. Prosser, Handbook of the Law of Torts 856 (4th ed. 1971); *see also Jennings,* 567 F.2d at 1218–19. No abuse of process exists when the process is used to accomplish the result for which it is created, regardless of an incidental motive of spite or ulterior purpose. *See Miami Herald Publishing Co. v. Ferre,* 636 F.Supp. 970, 975 (Fla. S.D. 1985) (abuse of process arises only when there has been perversion of court process to accomplish end which process was not intended by law to accomplish, or which compels party to do some collateral thing he could not legally be compelled to do) (citation omitted).   Here, Plaintiff's allegation is not as to a "court process" rather Plaintiff's claim is that the ASA Defendants conspired to abuse process as to the issuance of the EOR. Id. at pp. 67 and 69. Moreover, the ASA Defendants did not initiate the DOH investigation.

Next, Plaintiff has failed to state a cause of action for conspiracy. In order to state a claim for conspiracy under Section 1983, a plaintiff must allege that there is or was an agreement between two or more individuals to act in furtherance of the objective of the conspiracy. *McKenzie v. Doctors' Hospital of Hollywood, Inc.,* 765 F.Supp. 1504, 1507 (S.D. Fla.1991). A plaintiff "must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy." *Bailey v. Board of County Commissioners of Alachua County, Fla.,* 956 F.2d 1112, 1122 (11th Cir.1992) (internal quotations omitted). The linchpin for a conspiracy claim is the agreement between the parties, and where the complaint fails to allege this agreement, the complaint is deficient and should be dismissed. *McKenzie,* 765 F.Supp. at 1507; *see also Bailey,* 956 F.2d at 1122. Conclusory allegations of a conspiracy are insufficient under the law to establish individual liability. *Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013); *see also Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (conspiracy must contain a factual predicate of the acts not conclusory allegations).; *Cole v. Grey*, 638 F.2d 804, 811 (11th Cir. 1981) (murky allegations linked by conclusory allegations are insufficient to set forth conspiracy claim under civil rights statute).

Here, Plaintiff alleges a conspiracy on nothing more than conclusions and labels in contravention of *Twombly*. Specifically, the Plaintiff asserts this fantastical conspiracy with the conclusory and circular allegations that each Defendant participated in a conspiracy to abuse process with, again, no factual averments as required. *Id.* at p. 92, ¶ 502. Most fatal to Plaintiff's claim is that he labels Defendants as co-conspirators, yet never alleges any type of agreement amongst them with actual *Twombly* facts. [D.E. 1 at p. 27, ¶ 122]. In point of missing fact/s, the "amended" allegations do not demonstrate any form of a conspiracy among the parties and likewise fails to meet the requirements for plausibility pleading in federal court. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Because Plaintiff has failed to state a cause of action for conspiracy as a matter of law, Counts VII and VIII should be dismissed. Counts XXV and XXVI – Tortious Interference with Business Relationships- must also be dismissed as the basis for those counts is the conspiracy involving issuance of the ERO.

## CONCLUSION

Based on the foregoing, Defendants JONATHAN S. HENDRICKS and ASHLEY K. ALBRIGHT respectfully request that the instant Motion be granted and the Plaintiff's claims against the ASA Defendants be dismissed with prejudice. A proposed Order shall be submitted as required under the Local Rules.

Respectfully submitted,

WHITELOCK & ASSOCIATES, P.A.
300 Southeast Thirteenth Street
Fort Lauderdale, Florida 33316
Phone No.: (954) 463-2001
Facsimile No.: (954) 463-0410
Counsel for Defendant, Florida
Department of Corrections


/s/Christopher J. Whitelock
CHRISTOPHER J. WHITELOCK
Florida Bar No. 067539
MEREDITH A. CHAIKEN
Florida Bar No. 87927

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2023, I electronically filed the foregoing document with the Clerk of Court using CMECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

s/Christopher J. Whitelock
CHRISTOPHER J. WHITELOCK

## SERVICE LIST

Michael D. Schutt, Esq.,
Fuentes Berrio Schutt
709 E. Hillsboro Blvd.
Deerfield Beach, FL 33441
e-mail:  mike@fuentesberrio.com
paralegal@fuentesberrio.com
litigation@fuentesberrio.com
pleadings@fuentesbverrio.com

 Michael R. Piper, Esq.
Christopher J. Stearns, Esq.
Johnson, Anselmo, Murdoch, Burke,
Piper & Hochman, P.A.
2455 East Sunrise Blvd., Suite 1000
Ft. Lauderdale, FL 33304
e-mail:  piper@jambg.com
cintron@jambg.com
andrews@jambg.com
stearns@jambg.com
young@jambg.com

Joan Carlos Wizel, Esq.
Onier Llopiz, Esq.
Onier Llopiz, Esq.
1451 W. Cypress Creek Road, Suite 300
Ft. Lauderdale, FL 33309
jcw@l-wfirm.com
admin@l-wfirm.com
ol@l-wfirm.com
gb@l-wfirm.com